UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIRMALA AMIN,

     Plaintiff,

                                    Case No. 11-13789
v.                               Hon. Gerald E. Rosen

BANK OF AMERICA PENSION PLAN
FOR LEGACY COMPANIES and BANK
OF AMERICA CORPORATION,

     Defendants.

_____/

FINDINGS OF FACT
AND CONCLUSIONS OF LAW REGARDING
DEFENDANTS' MOTION TO AFFIRM ADMINISTRATOR'S DECISION

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____June 12, 2013_____

PRESENT:  Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

## I. INTRODUCTION

In the present suit, Plaintiff Nirmala Amin challenges the decision of the

Defendant Bank of America Pension Plan for Legacy Companies (the "Plan") and the

Plan administrator, Defendant Bank of America Corporation, determining that Plaintiff is

not a Plan participant and thus is not owed any pension benefits under the Plan.  This

Court's subject matter jurisdiction over this case rests upon Plaintiff's claim for benefits

under an employee welfare benefit plan governed by the Employee Retirement Income

1

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Presently before the Court is Defendants' motion to affirm the Plan administrator's decision that Plaintiff is ineligible for pension benefits under the Plan. In support of their motion, Defendants argue that an investigation revealed no record of Plaintiff being a Plan participant or otherwise entitled to benefits under the Plan, and that the documents produced by Plaintiff fail to support a different result. In response, Plaintiff points to the documents she submitted establishing her years of employment with predecessors to Defendant Bank of America, and she contends that Defendants failed to properly consider whether these materials evidence her eligibility for pension benefits under the terms of the Plan.

Defendants' motion has been fully briefed by the parties and is ready for decision.[1] Upon reviewing the parties' submissions, the pleadings, and the underlying administrative record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these materials, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs," *see* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan, following the guidelines set forth by the Sixth Circuit in *Wilkins v. Baptist Healthcare*

---

[1]The Court notes that Plaintiff has not filed a cross-motion seeking reversal of Defendants' decision to deny her claim for pension benefits, but instead has advanced her arguments for reversal solely in her response to Defendants' motion.

*System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).[2]  This opinion and order sets forth the

Court's findings of fact and conclusions of law.  To the extent that any findings of fact

constitute conclusions of law, they are adopted as such.  To the extent that any

conclusions of law constitute findings of fact, they are so adopted.

## II.  <u>FINDINGS OF FACT</u>

In light of the arguments made by the parties in their submissions in support of and

opposition to Defendants' motion, the relevant facts of this case may be fairly briefly

summarized.  Plaintiff Nirmala Amin is a former employee of two predecessors of

Defendant Bank of America Corporation, Michigan National Bank and Standard Federal

Bank.  Plaintiff accrued just over twelve years of service at these two banks; she began

her employment with Michigan National Bank in July of 1989, and her employment was

terminated in November of 2001.

In September of 2009, Plaintiff submitted an initial request for pension benefits

arising from her several years of employment with the predecessors of the Defendant

bank.  Attached to this letter was a two-page document Plaintiff evidently received in

2001 regarding her eligibility for benefits under the "NAB Group/USA Pension Plan."

(Admin. Record at 82-83.)  According to this statement, as of January 1, 2001, Plaintiff

had attained two years of credited "benefit service" and was "0% vested" in the pension

---

[2]Specifically, *Wilkins* holds that neither summary judgment nor a bench trial provides an appropriate procedural basis for resolving ERISA actions to recover benefits.  Rather, the Sixth Circuit suggested that district courts generally should review challenged benefit denials "based solely upon the administrative record, and [should] render findings of fact and conclusions of law accordingly."  *Wilkins,* 150 F.3d at 619.

benefit offered under this plan.  (*Id.* at 82.)  This statement further indicated that Plaintiff's normal retirement date was November 1, 2012, and that her early retirement date was November 1, 2007.  (*Id.*)

In response to Plaintiff's request for pension benefits, the Personnel Center for the Defendant bank began to investigate this claim, and Plaintiff was asked to complete a "Prior Employment Questionnaire" in which she was asked to provide additional details of her employment with the bank or its predecessors.  On November 17, 2009, the Personnel Center notified Plaintiff that it had "reviewed our historical documentation" and "found no evidence of a vested pension benefit due to you from" the Defendant Bank of America Pension Plan for Legacy Companies (the "Plan").  (*Id.* at 91.)  Plaintiff was further informed of the steps she could take to seek a review or administrative appeal of this denial of benefits, and was advised of her opportunity to review at no cost any pertinent documents needed to support her claim for benefits.  (*Id.* at 91-92.)

On December 11, 2009, Plaintiff, through counsel, made a formal request for review of the denial of her claim for pension benefits.  (*See id.* at 88-89.)  This letter was accompanied by (i) materials showing the severance benefits received by Plaintiff upon the termination of her employment in late 2001, (ii) a statement from the Social Security Administration reflecting Plaintiff's earnings from 1989 to 2001 and deferred compensation amounts evidently withheld from Plaintiff's pay for the years 1994 through 2001, and (iii) copies of W-2 wage and tax statements issued to Plaintiff for tax years 1989 to 2002, which indicated that Plaintiff participated in a pension, deferred

4

compensation, or retirement plan during these years.  (*See id.* at 94-107.)  Plaintiff also

provided a form authorizing the Personnel Center to release to her counsel any

information concerning her employment, wages, and employee benefits.  (*See id.* at 90.)

On March 10, 2010, the Plan administrator advised Plaintiff's counsel that

Plaintiff's claim for pension benefits had been denied on the ground that she had

"provided insufficient proof to establish a vested benefit in the Plan."  (*Id.* at 63.)  The

Plan administrator acknowledged that "a predecessor to the Plan was maintained" during

the years of Plaintiff's employment, but explained that employees such as Plaintiff "could

only be due a Plan benefit if their employment made them eligible for Plan benefits, they

participated in the Plan, and they actually accrued a vested benefit under the Plan during

their period of employment."  (*Id.*)  The Plan administrator stated that the records for the

Plan did not indicate that Plaintiff met these standards for benefit eligibility, but that, to

the contrary, the 2001 retirement benefit statement previously provided by Plaintiff

disclosed that she was "0% vested in her benefit under the Plan in the year of her

termination."  (*Id.*)  The Plan administrator then informed Plaintiff and her counsel that

they could pursue an appeal "to the Bank of America Benefits Appeals Committee for a

full and fair review of your denied claim," and Plaintiff was advised that if she was "able

to produce additional documentation of a Plan benefit, such as a terminated vested letter,"

this documentation would be "considered in an appeal of this decision."  (*Id.* at 63-64.)

Plaintiff and her counsel pursued this available administrative appeal through a

letter dated May 6, 2010.  (*See id.* at 6-7.)  Plaintiff did not submit any additional

documentation in support of this appeal, but instead merely expressed her "belie[f]" that the 2001 benefit statement reflecting two years of benefit service and zero percent vesting was not accurate.  (*Id.* at 6.)  As the basis for this belief, Plaintiff pointed to the evidence in her W-2 statements and the Social Security Administration records that she had "contributed to deferred compensation plans" during her employment, and that she had "participated in a pension plan, deferred compensation plan or a retirement plan" throughout the period of her employment.  (*Id.*)  She further contended that the record of her twelve years of service "contradict[ed]" the assertion in the 2001 benefit statement that she had accrued only two years of "benefit service."  (*Id.*)  Finally, her counsel asked that he be given the opportunity to review the materials in the Plan administrator's possession "relevant to [Plaintiff's] claim for benefits, including but not limited to . . . all calculations regarding years of service and vesting and summary plan descriptions" for the pension plans offered by the Defendant bank and its predecessors, and he promised to provide "a more specific and detailed accounting of the issues" upon his review of these materials.  (*Id.* at 7.)

By letter dated August 31, 2010, the Bank of America Benefits Appeals Committee (the "Committee") denied Plaintiff's appeal, explaining that "a review of the Plan's records and the documentation provided" by Plaintiff failed to produce sufficient "proof to establish a vested benefit for [Plaintiff] in the Plan."  (*Id.* at 1.)  The Committee, like the Plan administrator, noted that the 2001 retirement benefit statement produced by Plaintiff showed that she was zero percent vested under the NAB Group/USA Pension

6

Plan as of the year of her termination, and the Committee observed that Plaintiff had not "provided any documentation which refutes this 2001 statement or otherwise establishes that she is due a Plan benefit." (*Id.*) As for Plaintiff's claim of a discrepancy between her twelve years of service and the two years of "benefit service" reflected in the 2001 benefit statement, the Committee explained that "'years of service' for purposes of determining severance pay . . . does not necessarily equate to 'years of service' for the Plan," and that "[q]ualified pension plans . . . have specific eligibility and vesting requirements that [Plaintiff] may not have satisfied during her employment." (*Id.*) Likewise, the Committee stated that the W-2 and Social Security statements provided by Plaintiff, while serving as "[p]roof of employment," would not "suffice to establish that an employee is due a Plan benefit," and that "the Plan's record's do not indicate that [Plaintiff] is due a Plan benefit for such period of employment." (*Id.*)

Next, in response to Plaintiff's counsel's request for materials relevant to the denial of Plaintiff's claim for benefits, the Committee provided copies of the plan documents for the three pension plans in effect during the period of Plaintiff's employment with the predecessors to the Defendant bank. (*See id.* at 2.) The Committee explained, however, that there were "no specific Plan provisions upon which the denial of Plaintiff's appeal is based," and that this denial instead was "based on the fact that the Plan does not have a record of any vested benefit accrued by [Plaintiff] under the Plan." (*Id.*) Finally, the Committee advised Plaintiff that she had "fully exhausted the Plan's claims and appeals procedures," and that her remaining recourse was to the courts. (*Id.*)

7

This suit followed a year later, on August 30, 2011, with Plaintiff seeking judicial review of the denial of her claim for pension benefits under the Defendant Plan.

### III.  CONCLUSIONS OF LAW

**A.      The Standards Governing Defendants' Motion**

A participant in or beneficiary of a plan governed by ERISA may bring suit in federal district court to recover benefits due under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).  Courts review *de novo* a denial of benefits challenged under this provision, unless the benefit plan confers upon the administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a more deferential "arbitrary and capricious" standard applies.  *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996).

In this case, Defendants contend, and Plaintiff concedes, that the "arbitrary and capricious" standard governs the Court's review.  (*See* Plaintiff's Response Br. at 4 ("Plaintiff stipulates that the standard of review governing this case is the arbitrary and capricious standard.").)  Under the Defendant Plan, the Committee that issued the final decision on Plaintiff's administrative appeal is granted the "duty and power" to (i) "construe and interpret the Plan in its sole discretion," (ii) "make determinations and findings . . . with respect to all questions that shall arise" under the Plan, "including in connection with the determination of claims," and (iii) "decide all questions relating to the eligibility of Employees to participate in the Plan as well as to receive benefits under

8

the Plan." (Plan at 56, Admin. Record at 170.) The Plan further provides that "[t]he Committee's exercise of such discretion shall be conclusive and binding upon all persons as long as it is not arbitrary and capricious, except as otherwise provided by law." (Plan at 57, Admin. Record at 171.) It is clear (and undisputed) that this Plan language triggers the arbitrary and capricious standard of review with regard to the Committee's denial of Plaintiff's claim for pension benefits under the Plan.

This standard is the "least demanding form of judicial review," under which this Court must uphold a denial of benefits if it is "rational in light of the plan's provisions." *Monks v. Keystone Powdered Metal Co.,* 78 F. Supp.2d 647, 657 (E.D. Mich. 2000) (internal quotation marks and citations omitted), *aff'd,* 2001 WL 493367 (6th Cir. May 3, 2001). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citations omitted). "Before concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." *Marchetti v. Sun Life Assurance Co.,* 30 F. Supp.2d 1001, 1008 (M.D. Tenn. 1998).

Finally, in reviewing the Committee's decision to deny benefits, the Court is "confined to the record that was before the Plan Administrator," and "may not admit or consider any evidence not presented to the administrator." *Wilkins,* 150 F.3d at 615, 619. The pertinent record, however, encompasses all materials considered during any phase of

the administrative review process, whether in connection with the Plan administrator's

initial decision or the Committee's determination to affirm this decision on administrative

appeal. *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir. 1991).

**B.      The Determination that Plaintiff Did Not Establish Her Entitlement to Pension Benefits Under the Plan Was Not Arbitrary or Capricious.**

With the above standards in mind, the Court now turns to the benefit determination

at issue here — namely, the Committee's decision that Plaintiff failed to produce

sufficient proof of her entitlement to pension benefits under the Plan.  In challenging this

decision, Plaintiff contends that Defendants have failed to identify any "deliberate

reasoning process" through which the Committee determined that Plaintiff was ineligible

for benefits, (Plaintiff's Response Br. at 7), but instead have merely relied on the absence

of affirmative evidence in the administrative record that Plaintiff ever accrued a vested

benefit under the Plan.  In Plaintiff's view, it was the Committee's burden to review the

record of Plaintiff's employment with the predecessors to the Defendant bank, and to then

point to specific terms of the Plan as demonstrating why this employment history failed to

establish a right to vested pension benefits.  In the absence of such an analysis resting on

particular Plan provisions as applied to Plaintiff's specific employment record, Plaintiff

suggests that Defendants have failed to supply the requisite reasoned decision that can

survive even the lenient "arbitrary and capricious" standard of review.

As Defendants point out, however, Plaintiff's challenge rests upon an

impermissible attempt to shift a burden that the law places squarely on Plaintiff —

10

namely, the burden to prove that she is entitled to pension benefits under the Plan.  *See*

*Mahone v. Pipefitters Local 636 Fringe Benefits Fund,* No. 09-13621, 2011 WL 3440122,

at *5 (E.D. Mich. Aug. 8, 2011).  In *Mahone,* 2011 WL 3440122, at *1, the plaintiff

joined Pipefitters Union Local 636, and this union local initially assigned him to work for

the Detroit Board of Education for nearly eight years.  The plaintiff then went to work for

a different employer for another eight years, and this second employer made contributions

to the Defendant pension plan on the plaintiff's behalf.  In order for the plaintiff to collect

benefits under the Defendant plan, however, he needed to accumulate ten or more years

of credited service with a "contributing employer."  *Id.* at *2.  The plaintiff's eligibility

for benefits, therefore, turned upon whether he should receive credit for the years he

worked for the Detroit Board of Education, but the plan administrator denied the

plaintiff's claim for benefits on the ground that there was no evidence that the Detroit

Board of Education was a contributing employer.  *Id.* at *3.

The plaintiff challenged this decision as arbitrary and capricious, arguing, among

other grounds, that there was "no proof in the record that the [Detroit Board of Education]

[wa]s not a contributing employer."  *Id.* at *5.  The court rejected this contention as

inconsistent with the rule that a claimant has the burden to establish his entitlement to

benefits:

> With respect to his first argument, the plaintiff is correct on one
> point:  there is no evidence in the administrative record one way or the other
> whether the Detroit Board of Education contributed any pension payments
> for the plaintiff during his employment there.  The plaintiff reasons that
> without such evidence, the defendant's determination is arbitrary and

11

capricious.

 It is true that a plan administrator's decision must be based on substantial evidence.  However, the administrator's decision in this case was that the plaintiff failed to establish a right to benefits.  It is the person claiming benefits that bears the burden to prove that he is entitled to those benefits under the plan.  Where the plan administrator denies benefits based on the lack of evidence, it is incumbent on the claimant to point to evidence in the record that contradicts such a finding and demonstrates that the decision, therefore, is arbitrary and capricious.

 The plaintiff has not identified any evidence in the administrative record that suggests that the Detroit Board of Education contributed fringe benefits on the plaintiff's behalf or otherwise qualified as a contributing employer within the meaning of the plan.  The defendant's conclusion that the Board was not a contributing employer was not arbitrary or capricious.

*Id.* at *5-6 (internal quotation marks and citations omitted).

Much the same can be said here.  The only affirmative evidence in the record that sheds any light on Plaintiff's status as vested under the Defendant plan (or any comparable pension plan offered by the predecessors of the Defendant bank for which Plaintiff worked between 1989 and 2001) is the 2001 benefit statement issued to Plaintiff by the NAB Group/USA Pension Plan, which informed Plaintiff that she had accrued only two years of benefit service and was "currently 0% vested in this benefit."  (Admin. Record at 82.)  Given this lack of evidence that Plaintiff had attained the requisite years of benefit service to receive vested benefits under the Plan — and, to the contrary, this evidence that Plaintiff's entitlement to benefits had ***not*** vested as of the last year of her employment, 2001 — it is "incumbent upon [Plaintiff] to point to evidence in the record that contradicts such a finding and demonstrates that the decision [to deny her benefits] . .

12

. [wa]s arbitrary and capricious." *Mahone,* 2011 WL 3440122, at *5.

The employment records produced by Plaintiff do not contradict the information disclosed in the 2001 benefit statement — and, more to the point, do not demonstrate that the Committee acted arbitrarily or capriciously in relying on this benefit statement to deny Plaintiff's claim for benefits. First, while Plaintiff points to the evidence of her twelve years of service with the predecessors to the Defendant bank, the Committee explained in its denial letter that "'years of service' for purposes of determining severance pay . . . does not necessarily equate to 'years of service' for the Plan," (Admin. Record at 1), and Plaintiff has not identified any Plan provisions that would require that each year of her employment be counted toward fulfilling the vesting requirements for Plan benefits. Next, the W-2 statements produced by Plaintiff, which evidently disclose contributions to some sort of pension, retirement, or deferred compensation plan during at least some of her years of employment, are too vague and ambiguous to serve as evidence of contributions to the particular pension plan named as a Defendant here, or to the pension plans offered by the predecessors to the Defendant bank.[3] Finally, Plaintiff has not

_____

[3]Indeed, as Defendants observe, there is strong reason to believe that the contributions reflected in Plaintiff's W-2 statements must have been made to a plan (such as a 401(k) plan) other than the Plan named as a Defendant here. As explained by Defendants, the Plan here is a defined benefit plan, and the Internal Revenue Code permits employee contributions to such a plan only after taxes are withheld. (*See* Defendants' Motion, Br. in Support at 10-11 n.4 (citing IRS forms and publications).) Yet, Plaintiff's W-2 statements reflect pre-tax contributions, indicating that they were directed toward a defined contribution plan such as a 401(k) plan. (*See id.*) At a minimum, this casts further doubt on the W-2 statements as evidence of Plaintiff's entitlement to vested benefits under the Plan, and further undermines Plaintiff's reliance on these statements in claiming that the Committee's denial of her claim for benefits was arbitrary and capricious.

pointed to any language in the Defendant plan – nor in any other pension plan in which she might have been eligible to participate by virtue of her 1989-2001 employment with the predecessors to the Defendant bank – that would demonstrate that her years of service would qualify her for vested benefits under any of these plans.  Indeed, Plaintiff cites no plan language anywhere in her response to Defendants' motion, much less endeavors to explain how the Committee might have misconstrued or misapplied any such language in denying her claim for pension benefits.

To be sure, in denying this claim, the Committee could have done as Plaintiff and her counsel suggest — that is, issue a thorough and comprehensive decision that canvassed the entirety of Plaintiff's employment history, cited to specific provisions in the plans in effect during Plaintiff's employment, and explained precisely how, in light of these provisions, Plaintiff's employment record failed to give rise to vested pension benefits.  It would undoubtedly be informative to the Court, just as to Plaintiff and her counsel, if the Committee (or Defendants in their motion and supporting briefs) had thoroughly explicated the benefit eligibility criteria under each of these plans and explained precisely why Plaintiff failed to meet these criteria for vested pension benefits under any of these plans.  Instead, the Committee chose to rely principally on a document (the 2001 benefit statement) produced by Plaintiff herself in support of her request for pension benefits, and this document explicitly disclosed that Plaintiff was zero percent vested in the benefits offered under her employer's pension plan as of beginning of the year (2001) in which she ceased working for this employer.  (*See* Admin. Record at 82.)

14

Although Plaintiff expressed her belief during the administrative process that this 2001 benefit statement was not accurate, (*see* Admin. Record at 6), she has offered nothing beyond bare speculation to support this belief, and the record evidence fails to disclose any inaccuracy in this statement.  Under these circumstances, the Committee cannot be deemed to have acted arbitrarily or capriciously in relying on this benefit statement as a basis for denying Plaintiff's claim for pension benefits under the Plan.

This leaves only Plaintiff's protest, advanced at length in her response to Defendants' motion, that she and her counsel somehow were denied access to the pertinent records and plan documents that were needed to mount a successful challenge to the Committee's denial of benefits.  Yet, to the extent that Plaintiff means to suggest that there was some sort of procedural defect in the administrative review of her claim for benefits, she did not assert any such procedural challenge in her complaint, as necessary to trigger an opportunity for discovery that could provide support for such a challenge, and to permit this Court to look beyond the record compiled in the course of the administrative review of Plaintiff's claim.  *See Wilkins,* 150 F.3d at 618.  Nor did she file any motion in the course of these proceedings seeking to explore any alleged procedural irregularities in the handling of her claim or to supplement the administrative record with materials that the Committee should have considered but did not.  As Defendants correctly observe, the courts have rejected such eleventh-hour efforts to identify purported procedural defects in the administrative processing of a claim for ERISA benefits.  *See, e.g., Fendler v. CNA Group Life Assurance Co.,* No. 06-3245, 247 F.

15

App'x 754, 757-58 (6th Cir. Sept. 7, 2007); *McCandless v. Standard Insurance Co.,* 765 F. Supp.2d 943, 957-58 (E.D. Mich. 2011), *rev'd on other grounds,* 2012 WL 6621351 (6th Cir. Dec. 20, 2012).

In any event, Plaintiff has failed to show that she lacked an appropriate opportunity to obtain additional documents during the administrative review process, or that, at the end of the day, she now lacks access to any portion of the record needed to pursue her judicial challenge to the denial of her claim for pension benefits.  During the course of the administrative review process, Plaintiff and her counsel were repeatedly invited to request "reasonable access to, and copies of, all documents, records, and other information relevant to [her] claim for benefits."  (Admin. Record at 19; *see also id.* at 2, 25.) Plaintiff's "failure to fully explore and exercise her procedural rights does not undermine the fundamental fairness of an otherwise full and fair administrative review process." *Balmert v. Reliance Standard Life Insurance Co.,* 601 F.3d 497, 502 (6th Cir. 2010).

More to the point, even if Plaintiff and her counsel might complain of partial or delayed compliance with their requests for additional documents during the administrative process, Plaintiff fails to identify any records or plan documents she ***now*** is lacking that would prevent her from citing particular evidence and plan provisions that demonstrate an arbitrary or capricious denial of her claim for benefits.  Much as Plaintiff's counsel might protest that a lack of access to pertinent records purportedly left him "unable to provide an analysis to the Benefit Appeals Committee with regard to the vesting requirements contained in the Plan," (Plaintiff's Response Br. at 7), Plaintiff and

16

her counsel have not identified any impediment to offering such an analysis before this Court.  Tellingly, however, they have not even attempted to do so.  Absent any basis for this Court to question the Committee's determination that Plaintiff was not eligible for benefits under the Defendant Plan — much less to conclude that this decision was arbitrary and capricious — Defendants' motion to affirm the Plan administrator's decision must be granted.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' June 29, 2012

motion to affirm the plan administrator's decision (docket #11) is GRANTED.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  June 12, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 12, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135